## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

ELIYAHU MIRLIS,                    :
                                   :
   plaintiff,               :
                                   :
v.                                 :   CASE NO. 3:18cv02082 (MPS)
                                   :
SARAH GREER,                       :
                                   :
   defendant.               :


## RULING ON PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY AND MOTION FOR DISCLOSURE

The plaintiff, Eliyahu Mirlis, filed this action against the defendant, Sarah Greer, to recover funds that were allegedly fraudulently transferred to the defendant. Prior to this action, the plaintiff obtained a judgment against the defendant's husband, Daniel Greer, in <u>Eliyahu Mirlis v. Daniel Greer</u>, 3:16-cv-00678 (MPS)("The Underlying Action"). The plaintiff alleges that certain funds were fraudulently conveyed to prevent the plaintiff from collecting the judgment and has filed a motion for a prejudgment remedy and a motion for disclosure of defendant's property.

After considering the briefs and materials submitted by the parties,[1] plaintiff's motion for a prejudgment remedy is GRANTED,

---

[1] A hearing was held on July 11, 2019, but no witnesses were called and both parties agreed that the court could determine the matter solely on the papers.

in part, and plaintiff's motion for disclosure of property is
GRANTED.

## **STANDARD**

Rule 64(a) of the Federal Rules of Civil Procedure provides
that in a federal action "every remedy is available that, under
the law of the state where the court is located, provides for
seizing a person or property to secure satisfaction of the
potential judgment." Fed. R Civ. P. 64(a); *see also* Novafund
Advisors, LLC v. Capitala Group, LLC, No. 3:18CV1023(MPS), 2019
WL 1438179, at *1 (D. Conn. Mar. 31, 2019). Thus, this Court
must apply Connecticut's prejudgment remedy statute, Conn. Gen.
Stat. § 52-278a, *et seq*. Under that statute, a prejudgment
remedy is available if the court finds "there is probable cause
that a judgment in the amount of the prejudgment remedy sought,
or in an amount greater than the amount of the prejudgment
remedy sought, taking into account any defenses, counterclaims
or set-offs, will be rendered in favor of the plaintiff. . . ."
Conn. Gen. Stat. § 52-278d(a)(1).

At this stage, the "trial court's function is to determine
whether there is probable cause to believe that a judgment will
be rendered in favor of the plaintiff in a trial on the merits."
Roberts v. Triplanet Partners, LLC, 950 F. Supp. 2d. 418, 421
(D. Conn. 2013) (quoting Balzer v. Millward, No. 3:10CV1740(SRU)
(HBF), 2011 WL 1547211, at *1 (D. Conn. Apr. 21, 2011) (internal

quotation marks omitted). The probable cause standard is modest, and "not as demanding as proof by a fair preponderance of the evidence." TES Franchising LLC. v. Feldman, 286 Conn. 132, 137 (2008). "The legal idea of probable cause is a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence, and judgment, under the circumstances, in entertaining it." Id. "When a plaintiff is seeking a prejudgment remedy based on a fraudulent transfer, the plaintiff must establish probable cause to believe that it can prove by clear and convincing evidence that the transfer was fraudulent." Cendant Corporation v. Shelton, 473 F. Supp. 2d 307, 312 (D. Conn. 2007) (citation and internal quotation marks omitted).

A probable cause determination requires the court to determine "the validity of the plaintiff's claim and the amount of the remedy sought." TES Franchising, LLC, 286 Conn. at 145-466 (2008); Conn. Gen. Stat. § 52-278(d)(a). In determining the amount of the remedy, "[d]amages need not be established with mathematical precision, but must be based on evidence yielding a fair and reasonable estimate." Triplanet Partners, 950 F. Supp. 2d at 421 (citation and internal quotation marks omitted).

For a motion to disclose property, "the court may, on motion of a party, order an appearing defendant to disclose property in which he has an interest or debts owing to him

sufficient to satisfy a prejudgment remedy." Conn. Gen. Stat. §
52-278(n)(a) (2019). "Generally, under Connecticut law, a
disclosure of assets is ordered if a prejudgment remedy is
ordered. Novafund Advisors, LLC, No. 3:18CV1023(MPS), at *2
(quoting Wachovia Bank, N.A. v. Cummings, No. 309CV957(SRU),
2010 WL 466160, at *9 (D. Conn. Feb. 8, 2010)).

## DISCUSSION

In connection with this matter, the parties submitted a
joint stipulation of facts which the Court adopts. The Court
will supplement with additional facts as needed.

Plaintiff alleges that three different types of fraudulent
transfers were made by the defendant to help her husband avoid
paying the judgment. First, that defendant transferred $238,000
by way of three different checks[2] from the defendant's joint
accounts with her husband to an account outside of Connecticut
that was solely in the defendant's name. Second, that the
defendant and her husband purposefully used her husband's money
to pay for expenses and reduce the number of assets in her
husband's name. Third, that the defendant and her husband are
officers and directors of intertwined non-profit organizations,

---

[2] The jury returned its verdict against defendant's husband on
May 18, 2017. The first check was drafted shortly before the
verdict, on May 12, 2017, for $5,000.00. The second check was
drafted on June 16, 2017 in the amount of $13,000.00. The final
check, a bank check from June 5, 2017, was made payable to the
defendant in the amount of $220,000.00.

from which the defendant receives large retirement benefits but her husband does not, such that the majority of the assets are in the defendant's name and not accessible by the plaintiff.

I.    The Fraudulent Transfer Claim

Under the Connecticut Uniform Fraudulent Transfer Act ("CUFTA"), a transfer made by a debtor is fraudulent as to a creditor if the creditor's claim arose before the transfer was made and the transfer was made with "actual intent to hinder, delay or defraud any creditor of the debtor." Conn. Gen. Stat. § 52-552e(a)(1). A creditor is anyone with a claim, including a judgment. Conn. Gen. Stat. § 52-552b(3-4). In this instance, the plaintiff obtained a verdict against the defendant's husband and is, therefore, creditor. A debtor is an individual liable for a claim. Id. at § 52-552b(5). Plaintiff's verdict was against Daniel Greer and, therefore, Mr. Greer is a debtor under CUFTA.

Under CUFTA, a transfer includes "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset. . . ." Id. at § 52-552b(12). A transfer is:

> fraudulent as to a creditor if the creditor's claim arose
> before the transfer was made or the obligation was
> incurred and if the debtor made the transfer or incurred
> the obligation: (1) with actual intent to hinder, delay
> or defraud any creditor of the debtor; or (2) without
> receiving a reasonably equivalent value in exchange for
> the transfer or obligation, and the debtor (A) was
> engaged or was about to engage in a business or a
> transaction for which the remaining assets of the debtor

were unreasonably small in relation to the business or
transaction, or (B) intended to incur, or believed or
reasonably should have believed that he would incur,
debts beyond his ability to pay as they became due.

Id. § 52-552e(a). When determining if fraudulent intent has been
proven, a court can consider: (1) if the transfer was to an
insider; (2) if the debtor retained control of the property
after transfer; (3) if the transfer was concealed; (4) if the
debtor had been sued or threatened with a suit before the
transfer; (5) if the transfer was substantially all of the
debtor's assets; (6) if the debtor fled; (7) if the debtor hid
assets; (8) if the debtor received consideration equal to the
amount transferred; (9) if the debtor was insolvent or became
insolvent as a result of the transfer; (10) if the transfer
occurred shortly before the debt was incurred; and (11) if the
debtor transferred essential business assets to a lienor who in
turn transferred the assets to an insider of the debtor. Id. at
§52-552(e)(b).

In order to prevail on his fraudulent transfer claim, the
plaintiff must prove that (1) there was a transfer of an asset,
(2) the creditor had a claim which arose before the transfer was
made, and (3) the transfer was made with intent to hinder delay
or defraud the plaintiff as creditor.

Plaintiff argues that the defendant fraudulently
transferred money from joint accounts that she held with her

husband (the debtor) after judgment was entered against her husband in order to prevent the plaintiff from collecting the judgment. (Dkt. #37). Based on the evidence, the Court finds that there is probable cause that the plaintiff can prove that an asset was transferred and that plaintiff's claim arose before the transfer was made.

First, the checks are transfers under the CUFTA as a mode transferring the debtor's assets. See Cadle Co. v. Jones, 3:00CV316 (WWE), 2004 WL 2049321 (D. Conn. Aug. 20, 2004).

Second, the plaintiff, a creditor, clearly had a claim which arose before the transfers were made. Under the Fraudulent Transfer Act, a "claim [arises] on the date of the injury in the underlying action." Canty v. Otto, 304 Conn. 546, 561 (2012)(alteration in original)(internal quotation and citation omitted.) At the time of the check transfers, there was a pending lawsuit against the defendant's husband. The lawsuit commenced in May of 2016, such that the defendant and her husband had actual notice that a claim had been made and that a judgment could have been rendered against the husband in the future, a fact which the defendant acknowledges in her brief. (Dkt. #34-1.). As noted earlier, the first of the three checks was drafted a week before the jury returned its verdict and the remaining two checks were drafted within a month after the

verdict.[3] This evidence establishes that plaintiff's claim arose before the three transfers were made. See Canty, 304 Conn. at 561 (in a wrongful death case, the Court found that the claim arose on the date that the victim was murdered).

Third, the Court finds probable cause that the plaintiff can prove by clear and convincing evidence that the three transfers were made with fraudulent intent.  Relying upon the factors enumerated in Conn. Gen. Stat § 52-552(e)(b), the plaintiff argues that he can prove fraudulent intent. More specifically, plaintiff alleges that the defendant's husband retained possession and control of the transferred funds because the funds were used to pay joint obligations of the defendant and her husband.  The plaintiff also asserts that the transfers, which were concealed from the plaintiff, occurred immediately before and immediately after the verdict and judgment. Plaintiff further asserts that there was no consideration between the defendant and her husband regarding the transfers. Finally, the plaintiff notes that the defendant's husband was about to become insolvent at the time of the transfer, as a result of the

---

[3] Although the defendant testified that she could not recall if she knew about the verdict when she issued the checks in May and June of 2017, she testified that she was in court on the day the verdict was rendered so she was familiar with the numbers. (Pl.'s Ex. 3. 90:6-91:13.).

judgment. The Court agrees with the plaintiff's application of the factors set forth in Conn. Gen. Stat § 52-552(e)(b).

Here, the defendant is the wife of the debtor and clearly an insider.  There is probable cause that the debtor retained control of the funds as they were used to pay down joint expenses. (Pl.'s Ex. 22.) The Court also finds that the transfers were concealed from the plaintiff. There is evidence that after her deposition, the defendant nearly depleted a bank account that she had not used for a year. (Id.; Pl.'s Ex. 23.)

Further, the check transfers occurred around the time of the jury verdict and judgment. Ten days after the judgment, the transfers were deposited into an out of state account solely bearing the defendant's name. Not only did the check transfers occur at this time, but defendant removed herself as a signatory on an account that she had held jointly with her husband for years.

The debtor (defendant's husband) did not receive any consideration for the money that was transferred. Instead, the defendant testified that she had wanted "[t]o take the money from our joint account that belongs to me and take it out." (Pl.'s Ex. 3 81:2-3). In this respect, the defendant claims that the money in the joint account belonged to her.  However, the financial activity between August 2013 and July 2017 seems to contradict defendant's assertion.  Almost all of the money

deposited (and, in fact, withdrawn) from the joint account with
Liberty Bank was in the debtor-husband's name. (Pl.'s Ex. 8). Of
the eleven withdrawals or transfers made from the joint bank
account between August 2013 and July 2017, ten were made
directly to defendant's husband. (Id.) The remaining withdrawal
was for $220,000 to the defendant. (Id.) Similarly, every single
check that was deposited into the Liberty account was payable
solely to the defendant's husband. (Id.) Based on this evidence,
a fact finder could reasonably conclude that, contrary to
defendant's testimony, the money in the account did not belong
to the defendant, such that consideration was owed to the
debtor-husband.  The defendant has offered no evidence of any
such consideration.

     The defendant argues that, as a joint owner of the account,
she has a right to remove funds to another account and "she had
the right to withdraw the funds." (Dkt. # 34-1.) However,
defendant's right to withdraw the money at issue does not compel
a finding that the transfers were not fraudulent. Being a joint
owner does not change the probable cause analysis; all of the
elements for proving fraudulent transfer are still met,
regardless of whether or not the defendant's name was on the
account. This fact is illustrated by the court's ruling in Cadle
Co. v. Jones, 3:00CV316 (WWE), 2004 WL 2049321 (D. Conn. Aug.
20, 2004.). In Cadle, the spouse of a debtor-husband transferred

her husband's paychecks from their joint bank account to an account solely in her name. The court found clear and convincing evidence that the transfers were fraudulent. Although the spouse had a legal right to access the joint account, she did not have the right to hinder delay or defraud creditors.

## II.   Statute of Limitations

The defendant argues that the plaintiff's claim is barred by the applicable statute of limitations. The defendant argues that the statute of limitations for a fraudulent transfer is three years. In support of her argument, the defendant relies on the Connecticut Supreme Court's ruling in Travelers Indem. Co. v. Rubin, 209 Conn. 437 (1998) and the Connecticut Appellate Court's ruling in Valentine v. LaBow, 95 Conn. App. 436 (2006). The defendant argues that the three year statute of limitations began to run on the date that plaintiff's claim arose. Since the plaintiff filed his lawsuit against the defendant on December 18, 2018, the defendant argues that the plaintiff can only recover for claims arising within three years after December 18, 2018.  The Court disagrees with the defendant's arguments.

First, Travelers and Valentine both involved fraudulent transfer claims arising under the common law.[4] In contrast, the

---

[4] In Travelers, the court stated that "[o]rdinarily, the fraudulent conveyance statute, General Statutes §52-552, would be the basis for ran action to set aside a fraudulent conveyance of real property."  Travelers, 209 Conn. At 440.  However, the

instant claim arises under the CUFTA. Conn. Gen. Stat § 52-552j provides that the applicable statute of limitations for a CUFTA claim is "within four years after the transfer was made or the obligation was incurred…" (Emphasis added).  All three of the checks were issued within four years of December 18, 2018. Thus, the Court finds that the fraudulent transfer claims were timely made.

For the reasons listed above, the Court finds that there is probable cause that the plaintiff can prove by clear and convincing evidence that the check transfers were fraudulent under the CUFTA.[5] The Court also finds that there is probable cause that a judgment will be rendered in plaintiff's favor in the amount of $238,000 at trial. Since the Court finds that there is probable cause that plaintiff can prove with clear and

---

plaintiff conceded that the action was a common law action and therefore did not implicate § 52-552 (the CUFTA).  Id. Additionally, in Valentine, the court relied upon Travelers to conclude that "our Supreme Court has stated that the three year limitation period contained in §52-577 applies to common-law fraudulent conveyance actions." Valentine, 95 Conn. App. At 445.

[5] Plaintiff advances several theories regarding the check transfers, but the Court only needs to accept one theory to conclude that the plaintiff has met his burden of proof. Since the Court has determined that the plaintiff has established probable cause that he can prove by clear and convincing evidence that the check transfers were fraudulent and since the three checks total $238,000, the amount of the remedy sought, the Court will make no determination and will express no opinion on the merits of plaintiff's other theories or claims.

convincing evidence that the transfers were fraudulent, the Court also holds that there is probable cause plaintiff will receive the value of those checks, which is $238,000.

For the reasons articulated above, Plaintiff has established probable cause to support a prejudgment remedy in the amount of $238,000.

III. Plaintiff's Motion for Disclosure of Property

Because the Court has found probable cause for a prejudgment remedy, it is also appropriate to grant the motion for disclosure of assets. To this end, the Court adopts Exhibit A, a draft order prepared by the plaintiff's outlining the form and terms of disclosure.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for prejudgment remedy (Dkt. #22) is GRANTED in the amount of $238,000.00 and the amended motion to disclose property (Dkt. #25) is GRANTED.

This is not a recommended ruling. It is and has been the rule in this district that an application for a prejudgment remedy is considered non-dispositive. See Lafarge Building Materials, Inc. v. A. Aiudi & Sons, LLC, No. 3:15CV1203(JBA), 2015 WL 6551796, at *8 n.19 (D. Conn. Oct. 29, 2015) (listing cases). Therefore, this ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. §

636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. R. 72.2. As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 30th day of July 2019, at Hartford, Connecticut.

_____/s/_____
Robert A. Richardson
United States Magistrate Judge